**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**February 8, 2013**

# In the Court of Appeals of Georgia

A12A2319. PIERCE v. THE STATE.

MILLER, Presiding Judge.

Following a stipulated bench trial, Takeya Pierce was convicted of driving under the influence of alcohol (DUI less safe) (OCGA § 40-6-391 (a) (1)). On appeal, Pierce challenges the trial court's denial of her motion to suppress, contending that the officer seized her without an articulable suspicion when he knocked on the window of her parked vehicle and asked her to roll it down. Discerning no error, we affirm.

> When reviewing a trial court's decision on a motion to suppress, this [C]ourt's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to

a jury verdict and will not be disturbed if there is any evidence to support them.

(Citation and footnote omitted.) *Jones v. State*, 259 Ga. App. 506 (1) (578 SE2d 165) (2003).

Viewed in the light most favorable to the trial court's findings, the evidence shows that on February 6, 2012, Pierce was sitting in the driver's seat of a vehicle parked in front of a gas station. The vehicle's engine was running and the headlights were on. As the police officer exited the gas station, he observed Pierce in the vehicle and believed that Pierce was asleep behind the wheel. The officer approached Pierce's vehicle and shined his flashlight inside the vehicle. When the officer received no response from Pierce, he knocked on the window of the vehicle. Pierce woke up and looked at the officer standing at her window. Pierce then looked back down and began to scroll through her cell phone. The officer again knocked on the window and asked Pierce to roll it down. In response, Pierce rolled down her window, whereupon the officer detected an order of alcohol and noticed that Pierce had glassy eyes. The officer asked Pierce to step out of the vehicle, and Pierce admitted that she had

2

consumed alcohol earlier that day. After Pierce failed some of the field sobriety tests administered to her, she was arrested for DUI less safe.[1]

After her arrest, Pierce moved to suppress the evidence, contending that the officer seized her without an articulable suspicion of criminal activity when he knocked on the window of her vehicle a second time and asked her to roll it down. The trial court denied her motion.

In her sole enumeration of error, Pierce contends that the trial court erred in finding that the officer seized her without an articulable suspicion of criminal activity when he asked her to roll down her window. We disagree.

Fourth Amendment law is clear.

> [There are] three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause. In the first tier, police officers may approach citizens, ask for identification,

---

[1] A defendant may be charged and convicted of DUI less safe notwithstanding the fact that the defendant was in a parked vehicle when she appeared to be asleep in driver's seat of vehicle with the engine running and there was no one else present in the vehicle. See *Hendrix v. State*, 273 Ga. App. 792, 797 (3) (b) (616 SE2d 127) (2005) (although officers did not see the vehicle moving, they observed circumstances showing that the impaired defendant was in actual physical control of the vehicle, including evidence that the defendant was asleep at the wheel, he was alone in the vehicle, and the vehicle's engine was running).

3

and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave.

(Citations and punctuation omitted.) *Akins v. State*, 266 Ga. App. 214, 215 (596 SE2d 719) (2004).

Here, the police officer's testimony showed that Pierce was already stopped when the officer approached her vehicle. "It is well-established that an officer's approach to a stopped vehicle and inquiry into the situation is not a 'stop' or 'seizure' but rather clearly falls within the realm of the first tier of police-citizen encounter[s]." (Citation and punctuation omitted.) *Akins*, supra, 266 Ga. App. at 215 (1). During this first-tier encounter, the officer was permitted to "ask [Pierce] to roll down a window or step out of a car, and freely question [her] without any articulable suspicion, as long as the officer[] [did] not detain [her] or create the impression that [she] may not leave." (Citation and punctuation omitted.) Id. at 216 (1); see also *Mauge v. State*, 279 Ga. App. 36, 38 (630 SE2d 174) (2006). There is no evidence that the officer asked Pierce to roll down her window in a manner "that would have made a reasonable person in her position believe she was not free to leave." (Punctuation omitted.) *Akins*, supra, 266 Ga. App. at 215 (1). Significantly, "[t]here was no evidence that [the officer] engaged his siren [or] emergency equipment, drew his

4

firearm, or made any other show of force. Nor is there any evidence that the officer threatened, coerced, or physically restrained appellant." (Punctuation and footnote omitted.) *Lucas v. State*, 284 Ga. App. 450, 452 (644 SE2d 302) (2007).

Pierce contends that the first-tier encounter escalated into a second-tier encounter when, after she ignored the officer's first knock, the officer again knocked on the window and asked her to roll it down. Even if the encounter rose to the level of a second-tier encounter, the officer had a reasonable, articulable suspicion to detain Pierce. Notably, the officer found Pierce asleep behind the wheel of a vehicle with the engine running, and she was unresponsive when he initially shined his flashlight inside her vehicle. See *Hendrix*, supra, 273 Ga. App. at 792-794 (1) (officer had reasonable suspicion to detain defendant when defendant was asleep at the wheel of his vehicle and was unresponsive to officer's initial attempt to wake him). Since the officer's request was supported by a reasonable suspicion, we affirm the trial court's denial of Pierce's motion to suppress. See *Akins*, supra, 266 Ga. App. at 216 (2).

*Judgment affirmed. Ray and Branch, JJ., concur*.