## A97A0948. ROBINSON v. THE STATE.
### (486 SE2d 667)

McMURRAY, Presiding Judge.

A DeKalb County jury convicted Michael Robinson of trafficking in cocaine and possessing cocaine with intent to distribute. On appeal, he enumerates as error the trial court's denial of his motion to suppress. In that motion, Robinson claimed police illegally stopped his car, searched him and his passenger, and seized cocaine from the pocket of Robinson's jacket, which the passenger was wearing at the time of the search. The trial court ruled Robinson had no standing to complain of cocaine seized during a search of the passenger. *Held*:

On review of the denial of a motion to suppress, this Court construes the evidence most favorably to uphold the trial court's findings and judgment. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). The trial court's ruling will be affirmed if it is right for any reason. *Hunt v. State*, 212 Ga. App. 217, 219 (441 SE2d 514) (1994).

The evidence developed at the motion to suppress hearing, as found by the trial court, showed that on December 1, 1994, a confidential and reliable informant contacted the commander of DeKalb County's drug strike force. The informant had on several occasions provided this officer with information leading to drug seizures and arrests. The informant stated that around 1:00 p.m. that day, a long-haired, light-skinned black man driving a green Toyota automobile

would make a drug deal at the Red Lobster on Memorial Drive. The officer and his partner drove to the restaurant at the appointed time in an unmarked car.

As soon as the officers arrived at Red Lobster, a green Toyota, whose passenger was a man matching the description given by the informant, pulled into the restaurant's parking lot. The long-haired man got out of the car and walked toward the officers, looked at them, then returned to the Toyota. Several minutes later, a Lincoln Towncar pulled into the lot and the driver, later identified as Robinson, exchanged words with the long-haired man. The two cars then pulled to the back of the parking lot. The long-haired man got in the back seat of the Lincoln and, after a conversation with Robinson in the front seat, went back to the Toyota. Both the Toyota and the Lincoln left, going in opposite directions. Based on his experience, the officer believed a drug deal had occurred and radioed uniform patrol officers to stop the Lincoln.

Officers stopped the Lincoln at a fast-food restaurant and ordered Robinson and his passenger out of the car. Although searches of Robinson and the car yielded no contraband, police found a quarter kilogram of cocaine in the pocket of the jacket worn by the passenger, Jones.[1] Jones told officers that the jacket belonged to Robinson and said he put on the jacket only because he was cold and did not know it contained cocaine. Inside the jacket was a wallet containing Robinson's identification, and Robinson admitted the cocaine was his.

1. We disagree with Robinson's claim that the police had no authority to stop his vehicle. "At a minimum, the information upon which the officers acted was sufficient to create a reasonable, articulable basis for stopping [Robinson's car. The officer's] testimony showed the confidential informant had given reliable information on several occasions, and the officer saw and heard for himself that the informant could accurately predict [Robinson's] activities that [day]." *D'Angelo v. State*, 223 Ga. App. 558 (1), 559 (479 SE2d 384) (1996). Corroborated information given by the reliable informant, along with the officer's observations, gave the officer a "founded suspicion" that he had just witnessed criminal activity. See *Samuel v. State*, 198 Ga. App. 558, 559-560 (1) (402 SE2d 325) (1991). The uniformed officers were entitled to rely on that information to make an investigatory stop of Robinson's Lincoln. See *Beck v. State*, 216 Ga. App. 532, 534 (1) (455 SE2d 110) (1995). Therefore, to the extent Robinson claims the cocaine seizure resulted from the investigatory stop of his vehicle, we find no error because that stop was supported by articulable suspicion.

---

[1] Although Jones was indicted along with Robinson, Jones failed to appear for trial.

2. Finding the investigatory stop proper, we are now faced with the narrow question of whether Robinson has standing to claim a violation of his own constitutional rights in the resulting pat-down of his passenger, Jones, and in the search of the jacket Jones was wearing. Because Fourth Amendment rights are personal, a defendant may move to suppress evidence obtained through an illegal search or seizure only when *his or her own* rights were violated. *Rakas v. Illinois*, 439 U. S. 128, 132-133 (99 SC 421, 58 LE2d 387) (1978); *Gilbert v. State*, 159 Ga. App. 326, 327 (1) (283 SE2d 361) (1981). The unique facts in this case appear to present an issue of first impression.

Robinson claims he has standing to object to the search of the jacket because it belonged to him and he could have demanded the jacket from Jones at any time. But as the United States Supreme Court has held, "[w]hile property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, [cit.] property rights are neither the beginning nor the end of [the] Court's inquiry." *United States v. Salvucci*, 448 U. S. 83, 91 (100 SC 2547, 65 LE2d 619) (1980). Rather, "the inquiry focuses directly on whether the defendant had a reasonable expectation of privacy in the area searched. *Rawlings v. Kentucky*, 448 U. S. 98, 104 (100 SC 2556, 65 LE2d 633) (1980)." *State v. Scott*, 176 Ga. App. 887, 889 (1) (339 SE2d 276) (1985). Whether the accused (1) had the right to possession of the seized item, (2) had the right to exclude others from the area searched, and (3) took normal precautions to maintain the privacy and security of the items seized, are important factors in that analysis. *Sims v. State*, 251 Ga. 877, 882 (6) (311 SE2d 161) (1984) (citing *Rawlings v. Kentucky*, supra). The expectation of privacy must also be "legitimate" — one that "society is prepared to recognize as reasonable." (Citation and punctuation omitted.) *Rakas v. Illinois*, supra at 142 & n. 12.

Had the jacket been lying on the seat of Robinson's car, he might well have had standing to complain of a search. See, e.g., *Brown v. State*, 181 Ga. App. 768, 770 (1) (a), 771 (353 SE2d 572) (1987) (defendant who removed his shirt retained privacy interest in that shirt). In this case, however, the trial court found Robinson had no reasonable expectation of privacy in the jacket because he *allowed Jones to wear it* and took no precautions to maintain the privacy of its contents. We agree. As in *Rawlings v. Kentucky*, supra at 105, there is no evidence Robinson expected Jones to keep private the contents of the jacket; rather, the evidence presented showed Jones was wearing the jacket because he was cold and was unaware of its contents. Unlike a suitcase, briefcase, or other closed container, a jacket is not traditionally a repository for items of a private nature. See *Sims v. State*, supra at 882 (6); compare *State v. Browning*, 209 Ga. App. 197 (1), 198 (433 SE2d 119) (1993). In allowing Jones to have

unlimited control over the jacket and its contents, Robinson relinquished whatever expectation of privacy he may have had in it.

Moreover, when Robinson allowed Jones to wear the jacket, Robinson took the risk that police might conduct a pat-down search of Jones if the two were stopped for a traffic violation. See, e.g., *Maryland v. Wilson*, ___ U. S. ___ (117 SC 882, 885, 137 LE2d 41) (1997) (officers making a traffic stop may validly require vehicle's passengers to submit to a pat-down search for weapons). Therefore, any expectation of privacy Robinson may have held in the clothing Jones wore was not legitimate or reasonable. "Unlike a house, a hotel room, an automobile, or a briefcase, one cannot acquire a right to exclude others from access to a third person." *United States v. Brown*, 743 F2d 1505, 1507-1508 (11th Cir. 1984) (holding that a defendant may not object to a search of his companion's pants leg for drugs the two men hid there). The pat-down search was directed toward Jones, not Robinson. The fact that Jones was wearing a jacket belonging to Robinson does not give Robinson standing to complain of the search. See *Gilbert v. State*, supra (even though defendant may have placed drugs in the waist of his companion's jeans, he had no standing to complain of a search of her clothing).

*Judgment affirmed. Beasley and Smith, JJ., concur.*

DECIDED MAY 9, 1997.

▌ Before Judge Coursey.

*Paul J. McCord*, for appellant.

*J. Tom Morgan*, District Attorney, *Gregory K. Schwarz, Robert M. Coker*, Assistant District Attorneys, for appellee.