## A98A0094. LEWIS v. THE STATE.
(504 SE2d 732)

BEASLEY, Judge.

Neil Anthony Lewis, along with Warren Wilson, was indicted on one count of trafficking in cocaine and possession with intent to distribute cocaine. Lewis was also indicted for possession of a firearm during the commission of a crime. The jury found Lewis guilty on each of the first two counts of the lesser included offense of possession of cocaine. The jury also found Lewis guilty of the firearm charge. One of his enumerations of error is that the trial court erred in denying his motion to suppress evidence that was discovered as a result of an unlawful stop.

1. " 'When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them.' [Cit.]" *Carter v. State*, 229 Ga. App. 417, 418 (494 SE2d 108) (1997). See also *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994); *Robinson v. State*, 226 Ga. App. 406 (486 SE2d 667) (1997). "In considering the denial of the motion to suppress, we may consider both the transcript on the hearing and the trial transcript. [Cit.]" *Beck v. State*, 216 Ga. App. 532, 536 (1) (455 SE2d 110) (1995).

Viewing the evidence in the light most favorable to support the trial court's findings, it shows that Officers Williams and Sampsel were constitutionally permitted to stop the vehicle to make inquiry.

"Supreme Court holdings sculpt out, at least theoretically, three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief 'seizures' that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause. Under the first tier, a police officer may approach an individual and ask a few questions without triggering Fourth Amendment scrutiny." (Citations and punctuation omitted.) *State v. King*, 227 Ga. App. 466, 468 (489 SE2d 361) (1997). " 'The second tier occurs when the officer actually conducts a brief investigative *Terry* stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity.' [Cit.]" *McClain v. State*, 226 Ga. App. 714, 716 (1) (487 SE2d 471) (1997). The third tier is an actual or de facto arrest which requires probable cause and involves restraint of one's liberty. *Lambright v. State*, 226 Ga. App. 424, 425-426 (1) (487 SE2d 59) (1997).

Lewis's encounter with the police falls within the second tier. At

that level the officer must possess more than a subjective, unparticularized suspicion or hunch, but rather " 'a founded suspicion, some necessary basis from which the court can determine that the detention was not arbitrary or harassing.' [Cits.]" Id. at 426; see *Rogers v. State*, 206 Ga. App. 654, 659 (3) (426 SE2d 209) (1992); *McClain*, supra. A "stop" under the Fourth Amendment occurs, based on the totality of the circumstances, when a reasonable person would have believed that he was not free to leave, that is, whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officer's request or otherwise terminate the encounter. Id.

The question of whether reasonable suspicion exists to stop the vehicle must be "measured by current knowledge, i.e. at the moment the [stop] is made and not hindsight." (Citations and punctuation omitted.) *Lovell v. State*, 178 Ga. App. 366, 367-368 (1) (343 SE2d 414) (1986). The police did not stop Lewis until they had witnessed or had knowledge of at least five indicia which contributed to an articulable suspicion of criminal activity:

(a) Two men in a vehicle had just exited an abandoned, unlit development known for drug trafficking, late at night. This area had no buildings and had at times been posted for trespassing. The men had no apparent legitimate reason for being there.

(b) As soon as the police drove behind the car, Lewis reacted with conduct of avoidance by immediately pulling over to the curb behind another vehicle. Then, when the police did not pass but were pulling up behind him, he immediately backed up, in an apparent attempt to leave the police. The police saw this behavior as erratic.

(c) Lewis was driving a vehicle with a New Jersey license plate in an area where the residents and their kin were known by the officer to be from Georgia and to have Georgia plates on their vehicles.

(d) The residence which Lewis chose to stop in front of was one in which the officers had previously made numerous drug arrests.

(e) As the police were pulling in behind Lewis, and as they were activating the blue light, the passenger at the same time jumped out and began walking away into the yard, apparently to distance himself from the police.

The investigatory *Terry* stop of Lewis at that point was based on a reasonable, articulable suspicion of criminal activity and was not arbitrary or harassing. *Carter v. State*, 229 Ga. App. 417, 420 (494 SE2d 108) (1997). The denial of the motion to suppress evidence of what was found in the car and on Lewis's person was not error.

2. Turning to the denial of Lewis's motion to suppress evidence of the cocaine discarded by Wilson, the threshold question is whether Lewis has standing to challenge the seizure of this evidence. A defendant has standing to suppress evidence obtained through an

illegal search or seizure only when his or her own rights are violated, because these rights are personal and cannot be asserted vicariously. *Rakas v. Illinois*, 439 U. S. 128 (99 SC 421, 58 LE2d 387) (1978). In *Rakas*, the Supreme Court held that passengers occupying an automobile could not invoke the protections of the Fourth Amendment with respect to a search of the vehicle where they did not assert a property or a possessory interest in the place from which the evidence was seized or an interest in the property seized. Id. 439 U. S. at 148. See also *Mecale v. State*, 186 Ga. App. 276, 277-278 (367 SE2d 52) (1988); *Frederick v. State*, 226 Ga. App. 540, 541 (1) (487 SE2d 107) (1997).

In this instance, there is no evidence that Lewis asserted a possessory or proprietary interest in the premises from which the contraband was confiscated. Nor is there evidence that Lewis asserted a property interest in the contraband that was seized. Accordingly, he is without standing to challenge the admissibility of this evidence. *Mecale*, supra at 278. Therefore, the trial court properly denied Lewis's motion to suppress evidence of the cocaine discarded by Wilson. "A trial court's ruling will be affirmed if it is right for any reason.' [Cit.]" *Frederick*, supra at 542.

3. Lewis contends that the trial court erred in its denial of his motion for directed verdict in that the State offered no expert testimony that the substance found on Lewis's person was cocaine.[1]

" 'The standard of review for the denial of a motion for a directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction.' [Cit.] To sustain the conviction, the evidence must be sufficient to authorize the jury's finding of the defendant's guilt of the crime charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); [cit.]." *Cantrell v. State*, 230 Ga. App. 693, 694-695 (1) (498 SE2d 90) (1998).

DeKalb County Police Officer Gardner testified that he conducted a drug identification field test on the substance that was confiscated from Lewis's person and the test results identified the substance as cocaine.

"We have found no case where the results of a chemical field test have been held inadmissible, though it would appear that its reliability would be tested by defense cross examination and rebuttal and that the weight to be given it by the jury would be an appropriate subject for defense argument. [Cit.]" *Davis v. State*, 135 Ga. App. 203, 205 (1) (217 SE2d 343) (1975).

---

[1] Lewis did not raise, and therefore we do not address the issue of whether there was sufficient evidence to support the verdict of guilty against Lewis for possession of cocaine that was discarded by Wilson.

Contrary to Lewis's assertion, it was for the jury to determine whether the foregoing testimony established that the substance was cocaine. The jury obviously concluded that it was, and because we do not weigh the evidence on appeal, we conclude that there was sufficient evidence to establish that the white substance confiscated from Lewis's person was cocaine. *Jackson*, supra; *Davis*, supra.

4. Lewis's remaining enumerations of error have been examined and bear no basis for reversing the judgment.

*Judgment affirmed. Andrews, C. J., Blackburn, J., and Senior Appellate Judge Harold R. Banke concur. McMurray, P. J., and Ruffin, J., dissent. Eldridge, J., dissents without opinion.*

RUFFIN, Judge, dissenting.

Although I concur with Divisions 2 and 3 of the majority opinion, I respectfully dissent from Division 1 and the judgment of affirmance as follows.

Specifically, I do not believe as the majority finds, that the facts support a reasonable articulable suspicion that Lewis was engaged or about to be engaged in criminal conduct. Contrary to the majority's characterization of the facts, the evidence merely showed that Lewis and his companion were traveling in a high crime area with an out-of-state license plate. Although the area at one time had been posted with a "no trespassing" sign, the evidence is clear and undisputed that there was no such sign on the evening in question. With regard to the majority's statement that Lewis attempted to leave the police and acted in an erratic manner, the evidence simply showed that after he pulled his car to the curb, he attempted to back up; a maneuver commonly engaged in while parallel parking.

Finally, with regard to Wilson's exit from Lewis's car, the evidence shows only that this occurred simultaneously with the officers' stop. Accordingly, it is difficult to comprehend how this could have formed a basis for the stop.

Although I agree with the legal proposition relied on by the majority, I find it misapplied under the circumstances of this case. To reiterate, an officer must possess more than a subjective, unparticularized suspicion or hunch, but rather " 'a founded suspicion, some necessary basis from which the court can determine that the detention was not arbitrary or harassing.' [Cits.]" *Lambright v. State*, 226 Ga. App. 424, 426 (1) (487 SE2d 59) (1997); *Rogers v. State*, 206 Ga. App. 654, 659 (3) (426 SE2d 209) (1992). See *McClain v. State*, 226 Ga. App. 714 (1) (487 SE2d 471) (1997). "[A]lthough a neighborhood's reputation is a factor supporting articulable suspicion, the fact that [Lewis] was in a place which the officer characterized as [an area known for criminal activity] does not alone constitute an articulable suspicion justifying a *Terry* stop. . . . [Cit.]" *Barnes v. State*, 228 Ga.

App. 44, 46 (491 SE2d 116) (1997). Without more, there is insufficient evidence to provide an articulable, reasonable suspicion to justify the stop of Lewis's vehicle. See id. The only additional factor present in this case which could have formed the basis for the officers' stop is Lewis's out-of-state license plate. An out-of-state license plate is not an indication of criminality. Accordingly, contrary to the majority conclusion, I do not believe the officers' stop of the vehicle was based upon a reasonable articulable suspicion.

I am authorized to state that Presiding Judge McMurray joins in this dissent.

DECIDED JULY 16, 1998 —
RECONSIDERATION DENIED JULY 27, 1998 — ■

*Stephanie P. Wyatt,* for appellant.
*J. Tom Morgan, District Attorney, Barbara B. Conroy, Gregory J. Lohmeier, Assistant District Attorneys,* for appellee.